SIMON ALEXANDER *vs.* VIE H. GROVER.

Suffolk. December 7, 8, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction,* To redeem from equitable mortgage. *Trust. Equity Pleading and Practice. Estoppel. Bankruptcy.*

In a suit in equity to redeem real estate there was a finding of a master warranted by the evidence that a memorandum signed by the defendant acknowledged and declared that a conveyance of the real estate by the plaintiff to the defendant absolute in form was an equitable mortgage to secure certain indebtedness of the plaintiff to the defendant. In confirming a decree of the Superior Court founded on this finding this court declared that, even if there had been no memorandum of the trust, in accordance with the settled law of this Commonwealth it could have been shown on the oral evidence reported by the master that the conveyance although absolute in form was intended merely as security for a debt and the trust thus established.

An exception cannot be sustained to the ruling of a master in a suit in equity admitting certain evidence *de bene* upon the statement of the party offering it that it will contradict the testimony of a witness on the other side, if no motion afterwards is made to strike out the evidence.

A plaintiff is not precluded from maintaining a suit in equity, to redeem from an equitable mortgage real estate worth $18,000 which was conveyed by him to the defendant by a deed absolute in form but really as security for a debt of about $10,000, by the fact that the plaintiff in offering himself as a surety in a case pending in court testified that his property consisted of a billiard room and eleven tables and that his indebtedness did not exceed $50, or by the fact that he went into bankruptcy and made no reference in his schedules to his indebtedness to the defendant and no mention of the real estate or of any property held in trust for his benefit.

By an express provision of the bankruptcy act of 1898, § 70 f, upon the termination of proceedings by the confirmation of a composition offered by the bankrupt the title to his property revests in him.

Where real estate subject to a prior mortgage is conveyed by a deed absolute in form but really as security for a debt so that the effect of the transaction is an equitable mortgage, if the equitable mortgagee causes the prior mortgage to be foreclosed for the sake of clearing the title and purchases the property at the foreclosure sale and adds the amount thus paid by him to the indebtedness secured by the equitable mortgage, he stands no better than if he had paid off the mortgage and had it discharged, and cannot set up his title acquired at the foreclosure sale as a bar to a bill to redeem brought by the equitable mortgagor.

It is a wise exercise of discretion by a judge of the Superior Court sitting in equity, after a final decree has been entered and appealed from, to refuse to order a master to add to his report schedules filed by the plaintiff in bankruptcy proceedings, if the schedules are material only for the purpose of showing that certain property was not included in them, and this fact already appears in the report.

BILL IN EQUITY, inserted in a writ in the Superior Court dated October 18, 1904, to redeem certain real estate from an equitable mortgage. The case is stated in the opinion.

*J. J. Scott,* (*W. F. Donovan* with him,) for the defendant.

*W. Charak,* (*H. J. Jaquith* with him,) for the plaintiff.

SHELDON, J. The plaintiff alleges in his bill that in January, 1902, he conveyed to the defendant his equity of redemption in two parcels of land and the buildings thereon, subject to mortgages amounting to $6,000, and situated one in Cambridge and the other in Quincy; that this conveyance though absolute in form, was really a conveyance in trust or equitable mortgage to secure the defendant for an existing indebtedness and for a new loan amounting together to $3,800, or $9,800 including the prior mortgages, and that the plaintiff was to have the right to pay off the loan, and thereupon to take back the property and have it reconveyed to him; and the defendant gave him a written memorandum to this effect, a copy of which is annexed to the bill; that by an error the total amount to be paid by the plaintiff to redeem the property was stated at $11,800; that in April, 1903, in violation of the trust existing, the defendant sold and made an absolute conveyance of the Cambridge property to a third party, its value being far in excess of the debt owed by the plaintiff to the defendant, and refuses to account to the plaintiff. And the bill prays for an accounting, that the defendant be charged with the fair market value of the property in Cambridge, and be ordered to reconvey to the plaintiff the property in Quincy. The defendant contends that the transfer to him was absolute in fact as well as in form, and that although there was a subsequent oral agreement for a reconveyance of the property for the sum of $11,800, the plaintiff refused to carry this out, and waived and forfeited all right thereunder.

The case was referred to a master, who made a long report, finding that the conveyance made by the plaintiff to the defendant was really made upon the trust claimed by the plaintiff; that the plaintiff owed the defendant $2,500, and the defendant advanced to him the further sum of $1,300, and that the prior mortgages on the Cambridge and Quincy estates amounted to $6,000; that all these items were reckoned by the parties to determine the total amount which the plaintiff should pay to the

defendant to redeem the property, but owing to the fact that the defendant held two separate mortgages, one on land in Woburn, and one on the fixtures in a pool room in Boston, each for the sum of $2,000, to secure one sum of $2,000 which constituted a part of the plaintiff's prior indebtedness to the defendant, they counted both of these mortgages as if they had represented different debts instead of only one debt, and so made the total amount $11,800 instead of $9,800; and the defendant wrote this larger amount in the memorandum which he gave to the plaintiff; but that the plaintiff afterwards discovered this mistake, and explained it to the defendant, who thereupon drew his pen through the words "eleven thousand eight hundred," and wrote above them in ink the figures "9800"; and the master has found that the memorandum as thus changed conforms to the truth.

The master also found that the defendant sold the Cambridge property in March, 1903, for the sum of $12,500 to a purchaser, who immediately resold it for $2,000 more to another purchaser, to whom the defendant conveyed it. The master ruled that the defendant in taking the account between him and the plaintiff, was to be charged with the fair market value of the Cambridge property at the time of bringing the suit, and on widely varying testimony, largely from experts, has found that this value was $18,035. He also has charged the defendant with various small sums received by him, including the rents which he has received, or ought to be held liable for, and has credited him with the sum of $9,800, which includes the prior mortgages and the indebtedness due to him from the plaintiff, and with his payments for taxes, repairs, and for a foreclosure of the Quincy property which was apparently made to clear the title,* and with interest on all these items, and finds a balance due to the plaintiff of $6,958.77.

Both parties alleged numerous exceptions to this report; and the master, in obedience to an order made by the court, after-

---

* In January, 1902, immediately after the conveyance from the plaintiff to the defendant, the defendant took possession of the Quincy property, caused the prior mortgage to be foreclosed, and purchased the property at the foreclosure sale on August 9, 1902, by paying $500, the amount of the mortgage, and $65 for interest and expenses of foreclosure.

wards filed, so far as he was able to do this, — the testimony not having been fully preserved, — the evidence taken before him as to the alleged trust and the market value of the estate in Cambridge. Thereafter, the plaintiff's exceptions apparently were waived; and the defendant's exceptions were heard, his second exception was sustained, and he was credited on the account with the additional sum of $556.46; and all his other exceptions were overruled. A final decree then was entered, reciting that the defendant was indebted to the plaintiff in the sum of $6,402.31, and ordering that execution issue therefor, and that the defendant convey the Quincy estate to the plaintiff by a good and sufficient deed. The defendant has appealed from the interlocutory decree overruling his exceptions to the master's report and from the final decree; and we proceed to consider the questions which he has argued before us, treating all others as waived.

He complains that the master erred in finding that the conveyance to him was made upon the trust contended for by the plaintiff. So far as this is a question of fact, we cannot doubt that the finding was a proper one and well warranted by the evidence before the master. Nor has the master found that the plaintiff did not assent to the memorandum signed by the defendant. The master's statement is that both parties testified that the first agreement prepared by the defendant was objected to by the plaintiff; and the defendant did testify that this memorandum was the first one drawn; but the plaintiff denied this, and testified that it was the second one drawn. And even if there had been no memorandum of the trust relied on, it would have been fully competent for the plaintiff to show by parol evidence that his conveyance to the defendant, though absolute in form, was really intended merely as a security for debt, and thereby to establish the existence of a relation of trust and confidence between the parties. This has been the settled law of this Commonwealth since the decision of *Campbell* v. *Dearborn,* 109 Mass. 130. See also *Clark* v. *Seagraves,* 186 Mass. 430; *Potter* v. *Kimball,* 186 Mass. 120; *Cullen* v. *Carey,* 146 Mass. 50; *Hennessey* v. *Connor,* 139 Mass. 120. And there was much parol testimony before the master, in addition to the memorandum which has been mentioned. Of course the stipulation that the plaintiff should have a reconveyance upon redemption was

not inconsistent with his contention. Those exceptions which rest upon this ground cannot be sustained.

The defendant contends that the master erred in allowing the plaintiff to put in against the defendant's objection evidence of conversations which he had with one Thurston and one McNamee. But all that appears by the master's report is that some evidence of statements made by Thurston, who had been a witness for the defendant, was received *de bene* on the plaintiff's statement that they would contradict testimony which Thurston had given; and the matter was not again brought up. This exception cannot be sustained.

It does not appear, upon the facts reported by the master, that any of his findings as to the amounts to be allowed to the defendant for repairs were erroneous.

It appeared that in December, 1902, the plaintiff came before Mr. Jones, a master in chancery in Boston, and offered himself as a surety in a case pending in court, and testified under oath that his property consisted of a billiard room and eleven tables, and that his indebtedness did not exceed $50. In January, 1903, he went into bankruptcy, and made no reference in his schedules to his indebtedness to the defendant now in question, and no mention of the real estate in Cambridge or Quincy, or of any property held in trust by any one for his benefit. The defendant contends that the plaintiff is precluded by these facts from maintaining the bill. But it is well settled that these statements, though they are to be considered in determining the facts, cannot be regarded as creating any estoppel in favor of the defendant against the plaintiff. They were statements made *alio intuitu*, to other parties, never communicated so far as appears to the defendant or acted upon or intended to be acted upon by him. *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257. *Hammond* v. *Abbott*, 166 Mass. 517. *Lincoln* v. *Gay*, 164 Mass. 537. And see *Rawson* v. *Plaisted*, 151 Mass. 71. The exceptions resting upon this ground must be overruled. It appeared that the bankruptcy proceedings had been terminated by the confirmation of a composition proposed by him; and accordingly the plaintiff's rights have not vested in a trustee in bankruptcy but are now vested in the plaintiff. U. S. St. 1898, c. 541, § 70 f.

The defendant cannot claim to hold an absolute title to the

Quincy estate under the foreclosure of the first mortgage which was procured to be made. The indebtedness secured by this mortgage was included in the amount which the plaintiff was to pay to redeem the property. The defendant can stand no better than if he had paid off the first mortgage, and had it discharged.

The testimony as to the market value of the Cambridge estate was widely variant, and the views of the different experts were wholly irreconcilable. Thurston, one of the defendant's witnesses, testified that he bought this property for $12,500 and sold it for $14,500, but that its value was only $6,000. Considering all the testimony together in the light of the circumstances reported by the master, and giving full weight to the defendant's elaborate argument, we cannot say that his valuation of the estate was erroneous, although it may be that if he had found a smaller amount, we could not have disturbed such a result. It might have been contended that the defendant should have been charged with the value of the property at the time of his selling it rather than at the date of bringing the bill; but neither party has made any point as to this, and we do not consider the question.

The defendant also has appealed from an order of the Superior Court denying his motion, made after the final decree had been entered and appealed from, that the plaintiff's schedules in bankruptcy be reported to the court. In view of the fact that the defendant had, by the report itself, the full benefit of any argument he could base upon the contents of those papers, we think that it was a wise exercise of the discretion of the court to deny this motion.

We have now considered all the questions which have been argued by the defendant, and the result is that his exceptions to the master's report must be overruled and the decrees of the Superior Court which have been appealed from affirmed; and it is

*So ordered.*