DENNIS J. O'BRIEN, administrator, *vs.* FREELAND E. HOVEY, administrator, & others.

Middlesex.   March 24, 1921. — May 28, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Mortgage,* Equitable. *Contract,* Consideration. *Equity Jurisdiction,* Accounting by equitable mortgagee, Laches, Statute of limitations, Interest. *Limitations, Statute of. Interest. Equity Pleading and Practice,* Costs.

An assignee of a mortgage of real estate, who, under an agreement with the mortgagor, acquires title to the mortgaged property at a sale held as a "friendly foreclosure" of the mortgage and thereafter holds the legal title to the real estate without a formal mortgage as security for the payment of the debt due to him for advances which he had made at the mortgagor's request to obtain an assignment of the note and mortgage — and upon supplementary agreements to pay an additional rate of interest thereon and three notes upon which the mortgagor was indebted to a bank of which the assignee was president, holds the property under a contract, supported by ample consideration, constituting him an equitable mortgagee.

A suit brought by the equitable mortgagor to enforce his rights under the equitable mortgage above described is not barred by laches if it appears that it was begun two years after the death of the equitable mortgagee, who never in his lifetime had repudiated the agreement under which he held the land, and that no rights of the successors in title and heirs of the equitable mortgagee were prejudiced in the meantime.

No election of the successors in title and heirs of the equitable mortgagee to repudiate the agreement, above described, under which he had held the land, having been declared more than six years before the suit was brought, the statute of limitations was not a defence to the suit.

The statute of frauds is not a bar to a suit to redeem property held by the defendant as equitable mortgagee.

In an account stated by a master in the suit above described, it appeared that $14,422.71 was due to the equitable mortgagee, of which $2,800 was credited to him for services and $10,490.90 as interest at twelve per cent under the terms of the mortgage; and the plaintiff contended that to redeem he should pay twelve per cent on the balance of the principal only, which he contended was $1,131.81; but this court, upon a reservation and report of the suit, held that the plaintiff

should pay interest on the entire sum found by the master to be due to the defendant at six per cent from the date of the account stated by the master.

In the suit above described, costs were assessed to the defendant. Following *Mills.* v. *Day,* 206 Mass. 530.

BILL IN EQUITY, filed in the Superior Court by Mary A. O'Brien (hereinafter called the plaintiff) and after her death prosecuted by the administrator of her estate, Dennis J. O'Brien, against Freeland E. Hovey, individually and as administrator of the estate of James F. Pennell, Annie E. Pennell, the widow, and Nellie P. Simpson, the daughter and heir at law of Pennell, and Charles River Trust Company (successor to Charles River National Bank), to establish that certain interests in real estate formerly owned by the plaintiff were held by the defendants Hovey, Pennell and Simpson as equitable mortgagees, for an accounting and for a reconveyance upon payment of whatever, if anything, was found due to the defendants as equitable mortgagees.

The suit was referred to a master. Material findings of the master are described in the opinion.

The defendants filed thirteen exceptions to the report, all but the fifth of which were based on objections to findings of fact by the master. The exceptions were heard by *Hammond, J.,* and the fifth exception of the defendants, based on an objection to a refusal to allow the defendants credit for the value of services rendered by Pennell and Hovey, was sustained and the case was recommitted to the master for a finding as to the value of such services and a restatement of the account. The master allowed $2,800 for such services and, in a restatement of the account, found that there was due to the defendants on November 1, 1920, $14,422.71.

The suit then came on to be heard by *Sisk, J.,* for final decree upon the pleadings, the memorandum and order for decree and interlocutory decree made by *Hammond, J.,* and the master's reports, " all parties waiving their right to object and except thereto, and thereupon, at the request of all parties in interest," he reserved and reported the case to this court " upon the pleadings, the facts found by the master in his report and in his supplemental report, and all questions of law therein, such decree to be entered as law and justice may require," stating " If it shall be held that the plaintiff is entitled to a decree for redemption of so

much of the real estate conveyed by the mortgage referred to in the bill of complaint as now stands of record in the defendant Hovey, it is agreed that the amount found by the master as due on November 1, 1920, namely, $14,422.71, is correct, the defendants to be charged with rents or profits thereafter received and credited with payments thereafter made, interest to be credited from such date, on such amount and at such rate as the Supreme Judicial Court may determine."

The argument of the plaintiff in this court as to interest was that the proper basis for computing interest up to such time as a final decree should be entered was to compute it at twelve per cent, the agreed rate in the Lebowich mortgage, on the balance of principal due on the mortgage. This, by deducting from the amount found by the master to be due to the defendants on November 1, 1920, the sums credited by the master as interest, $10,490.90, and as services, $2,800, the plaintiff contended was $1,131.81; and he argued that, if interest were to be allowed on any sum except principal due, it would mean that the mortgagees would receive compound interest; and that, there being no agreement that they should have compound interest, it should not be allowed.

*J. A. Daly*, for the plaintiff.

*W. F. Prime*, for the defendants.

PIERCE, J. This is a bill in equity brought on October 11, 1917, by Mary A. O'Brien, who died on March 22, 1918, and which is now prosecuted by the administrator of her estate, to redeem from an alleged equitable mortgage a certain described parcel of land on the corner of Winthrop Street and Boylston Street, Cambridge, Massachusetts. If the defendants be adjudged and decreed to hold the described property as equitable mortgagees of the plaintiff's equitable title to the premises, the bill further seeks an order for an accounting, and an order for the execution and delivery of a deed of the premises, if nothing be found due, or upon the payment of any sum found to be due from the plaintiff to the defendants. In their several capacities the defendants dispute the equity of the plaintiff's bill, allege the plaintiff is guilty of laches and set up the general and the special statutes of limitations.

The case was referred to a master and his findings of fact, with-

out a report of the evidence, in relation to the claim that the defendants hold the premises in question as equitable mortgagees, and as such are bound to account with the plaintiff, in substance is as follows: In June, 1909, the plaintiff, Mary A. O'Brien, was the owner of the premises in question subject to a mortgage of $11,500 to one Lebowich. The mortgage was given on September 4, 1908, by the plaintiff in her own right and by her husband to Lebowich in the principal sum of $16,500, and was payable, $5,000 in sixty days and the balance, $11,500, in six months from its date, with interest at the rate of six per cent per annum. The plaintiff paid to Lebowich a bonus of $200 when the mortgage was taken; and when the mortgage became due another bonus, of $100, was demanded by Lebowich. Just prior to June 7, 1909, Dennis J. O'Brien, acting with authority for the plaintiff, Mary A. O'Brien,. had a conversation with the defendant James F. Pennell, who died on October 5, 1915, in which, in substance, he stated that he was obliged to pay constantly bonuses to Lebowich for the extension of said $11,500 mortgage, and he desired Pennell to take over the mortgage. It was agreed by Dennis J. O'Brien and Pennell acting for himself and for the defendant Freeman E. Hovey, that they (Pennell and Hovey) would take over the Lebowich mortgage, upon the agreement of the plaintiff and her husband to pay interest on the mortgage debt at the rate of twelve per cent per annum, and to "make good" three notes held by the Charles River National Bank, of which Pennell was president and director, upon which notes the O'Briens were then indebted. In pursuance of this agreement Lebowich was paid the mortgage debt by Pennell and Hovey, the mortgage was assigned to them. and was duly recorded; the note secured by the mortgage was indorsed by Lebowich without recourse and transferred to Pennell and Hovey. Prior to the time of the giving of the Lebowich mortgage, since then, and up to February 6, 1911, when the mortgage was foreclosed, O'Brien collected all rents and made repairs. He deposited all rents in his own name; and after the assignment remitted to Pennell from time to time the payments of interest at the rate of twelve per cent per annum. In addition to the interest, $700 was paid on account of the principal before February 6, 1911, when the property was sold at foreclosure sale.

In the summer of 1910, Pennell said to Dennis J. O'Brien, in

substance, that he was not keeping up the taxes and interest; that it would be a benefit to him and to O'Brien and his wife if they would sign the property over to him to handle for their common benefit; that it would be best to dispose of some of the six parcels; that it would help a great deal; that they ought to try to sell something and that if they did it would lighten the load a good deal. He proposed a "friendly foreclosure," offered to loan O'Brien money and agreed to turn the property back to the O'Briens "when they had caught up the interest and other indebtedness on the mortgage." The plaintiff agreed that these arrangements be made. In the autumn of 1910, the property was advertised for sale, but for some alleged defect in the proceedings the sale was not completed. After this attempted sale Pennell said to O'Brien: "Do you still desire me to handle the property?" O'Brien replied: "I certainly do." "I would like to entrust it to you." Pennell said: "If you say so, we will advertise again." O'Brien replied: "I am satisfied." And the mortgaged property was advertised again. It was sold for $10,500, the full amount then due on the note, on February 6, 1911, to one Cameron acting in behalf of Pennell and Hovey, and was immediately conveyed to Hovey subject to prior mortgages. The plaintiff's intestate was not indebted to any persons other than to the holders of notes secured by the first mortgages of this property, to the holder of the Lebowich mortgage and to the Charles River National Bank upon the notes above mentioned.

The defendant Hovey testified that after the property was taken over on the mortgagee's sale "he and Mr. Pennell were fully paid." The master does not find that the Lebowich note was cancelled or that any indorsement of payment was made upon it. He does find that the note was not produced at the hearing before him. One Joseph P. Lyons testified that after the foreclosure Pennell said in a conversation concerning a sale to him of a part of the property foreclosed, "that he had no interest in it except the interest of O'Brien, and if O'Brien was satisfied he was willing to make the transfer." Lyons also testified that he said: "I am doing this first for the benefit of myself and for the benefit of O'Brien;" and that Pennell said: "We are all working for the benefit of O'Brien." There was further testimony from other witnesses that Pennell said "he was holding this property

for the benefit of O'Brien and that he was going to win Dennis out."

Without further recital of the material facts found by the master, we are of opinion that the "friendly foreclosure" did not operate as a payment of the O'Brien note; that it was not intended to affect that note or the debt evidenced by the note, but was designed to place the title to the equity in the mortgaged parcels of land in fee and not in mortgage in Pennell and Hovey, the lands, after the foreclosure of the mortgage, continuing to be held by Pennell and Hovey as security for the payment of $10,500 with interest thereon at twelve per cent per annum, and the three notes of the Charles River National Bank. In principle we think the result attained by these proceedings is and should be held to be the equivalent to a present loan of money from Pennell and Hovey to Mary A. O'Brien upon the security of an absolute deed. The facts fairly considered do not warrant a finding that the agreement of Pennell and Hovey was to reconvey the property to the O'Briens upon the payment to them within a reasonable time of the amount due upon the note at the time of the foreclosure, with interest at twelve per cent per annum, but they are consistent with an intent of Mary A. O'Brien and of Pennell and Hovey that the legal title to the land should be held by them, without a formal mortgage, as security for the payment of the debt due them upon the Lebowich note and upon the supplementary agreement to pay an additional interest on that debt and the three notes of the Charles River National Bank, this agreement being supported by ample consideration. *Cullen* v. *Carey,* 146 Mass. 50. *Potter* v. *Kimball,* 186 Mass. 120. *Alexander* v. *Grover,* 190 Mass. 462, 465.

The defendants contend that the plaintiff has lost his right to an accounting and redemption because of laches on the part of his intestate in not earlier taking steps to enforce her rights. We do not think this position is tenable, in view of the finding that during the lifetime of Pennell, who died October 5, 1915, "neither Mr. Hovey nor Mr. Pennell claimed to either Mr. or Mrs. O'Brien any ownership or title to the property adverse or in opposition to Mr. or Mrs. O'Brien." Otherwise stated, neither Pennell nor Hovey in the lifetime of Pennell ever repudiated his trust. *Potter* v. *Kimball, supra.* This suit was brought October 11, 1917, two years and six days after the death of Pennell. The delay in

instituting the suit did not in any way prejudice the rights of Pennell, his estate or the other defendant.

The defence of the statute of limitation is not open. The defendants took the estate charged with the trust, and their repudiation of that trust after the death of Pennell and their election to hold the property adversely to the claim of the plaintiff were not openly declared more than six years before the suit was brought. *Young* v. *Walker*, 224 Mass. 491, 493.

The statute of frauds is not a defence to the right to redeem property held by defendants under an equitable mortgage. *Campbell* v. *Dearborn*, 109 Mass. 130.

It follows that the plaintiff is entitled to redeem so much of the real estate conveyed by the mortgage referred to in the bill of complaint as now stands of record in the defendant Hovey; "it is agreed that the amount found by the master as due on November 1, 1920, namely, $14,422.71, is correct;" it is further agreed that "the defendants [are] to be charged with rents or profits thereafter received and credited with payments thereafter made," interest to be credited from November 1, 1920, on such amount and at such rate as the Supreme Judicial Court may determine.

The plaintiff contends that the interest should be computed on the balance of principal unpaid on the mortgage note on November 1, 1920, at the rate of twelve per cent, and not on the balance found due by the master on that date. We think, however, that interest should be computed at six per cent per annum on the balance of the account, $14,422.71, admitted to be correct on November 1, 1920, and so found should be credited to the defendants.

The defendants' exceptions so far as they are argued in the brief are overruled. The case is to be recommitted to the master to state the account from November 1, 1920, allowing the mortgagees six per cent interest on the balance found due November 1, 1920; costs to be awarded the defendants. *Mills* v. *Day*, 206 Mass. 530. The final decree is to be settled by the Superior Court upon confirmation of the report of the master.

*Decree accordingly.*